**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | **:** | |
| | **:** | |
| **v.** | **:** | **Case No. 25-cr-177 (ACR)** |
| | **:** | |
| **LARRY BING,** | **:** | |
| | **:** | |
| **Defendant.** | **:** | |

### GOVERNMENT'S SENTENCING MEMORANDUM

The Defendant unlawfully possessed a Glock 27 .40 caliber firearm and ammunition having previously been convicted of a felony offense.   For the reasons stated herein, the Government respectfully requests that the Court sentence the Defendant to a sentence of 30 months of imprisonment, followed by 3 years of supervised release, pursuant to the estimated guidelines in the plea agreement.

### BACKGROUND

On May 22, 2025, Metropolitan Police Department ("MPD") uniformed officers on patrol near the Southern Hills Apartment, located at 4205 4th Street SE, Washington, DC, observed the Defendant and another individual smoking marijuana in public. PSR ¶ 9.  The officers exited their vehicle to speak with the Defendant and the other individual; however, the Defendant began to quickly walk away from the officers before running. *Id.*  The officers pursued the Defendant on foot. *See id.* ¶¶ 9-10.

During the pursuit, the Defendant kept one arm pinned to the side of his body and held onto his waistband. *Id.* ¶ 9.  After the officers began to catch up to the Defendant, the Defendant crouched in front of a parked vehicle and tossed his Glock 27 .40 caliber firearm underneath the vehicle. *Id.* ¶ 10.  The Defendant then laid down on the sidewalk floor and was arrested by the

1

officers. *Id.* ¶¶ 10-11.

The officers looked underneath the parked vehicle and recovered the firearm tossed by the Defendant, bearing serial number KZZ557. *Id.* ¶ 10.  The firearm was loaded with one round of .40 caliber ammunition in the chamber and nine rounds of .40 caliber ammunition in the nine-round capacity magazine. *Id.* 10.  Additionally, the officers searched the Defendant incident to his arrest and recovered one small clear bag containing suspected cocaine base and one vial containing suspected PCP. *Id.* ¶¶ 11, 18 n.1.

The Defendant admitted that he knowingly possessed the firearm and ten rounds of ammunition while having a prior conviction punishable by more than one year of imprisonment. *Id.* ¶ 12.  Additionally, the Defendant acknowledged his prior convictions: (1) Unauthorized Use of a Vehicle, in which he was sentenced to 24 months of imprisonment in 2007 [1] and (2) Aggravated Assault Knowingly While Armed (Pistol) and Unlawful Possession of a Firearm (Prior Conviction), in which he was sentenced to 108 months of imprisonment in 2015. [2]

## PROCEDURAL HISTORY

On May 22, 2025, the Defendant was arrested and has been held without bond since. [3]  On June 24, 2025, a federal grand jury indicted the Defendant on one count of Unlawful Possession of a Firearm and Ammunition by a Person Convicted of a Crime Punishable by Imprisonment for a Term Exceeding One Year, in violation of 18 U.S.C. § 922(g)(1). *Id.* ¶ 1.

On November 10, 2025, the Defendant pled guilty to the indictment pursuant to a plea agreement. *Id.* ¶ 4.  The Government agreed to request a sentence not exceeding the sentencing guidelines' minimum period of imprisonment and had estimated the guidelines range to be 30-37

---

[1] PSR ¶ 12, 34 (DC Superior Court Case No. 2007 CF3 2941).
[2] PSR ¶ 12, 39 (DC Superior Court Case No. 2014 CF2 22199).
[3] PSR ¶ 1 (DC Superior Court Case No. 2025 CF2 5786).

months[4].

## SENTENCING GUIDELINES

Notwithstanding the parties' estimated guidelines, the Government concurs with the Pre-Sentence Report ("PSR") calculation that the Defendant's base offense level is 24 and that the Defendant's timely acceptance of responsibility provides a three-point reduction to his offense level. *Id.* ¶¶ 17, 24-25. The Government also concurs that the Defendant is not eligible for a zero-point offender adjustment. *Id.* ¶ 26. Thus, based upon the revised PSR released on February 10, 2026, the resultant total offense level of 21, along with a Criminal History Category of V, results in a corresponding range of imprisonment under the Guidelines of 70 months to 87 months. *Id.* ¶¶ 1, 27, 88.

Despite the higher sentencing guidelines range, the Government is only seeking a sentence consistent with the previously estimated guidelines range of 30 months to 37 months.

## LEGAL STANDARDS

When determining the appropriate sentence, the district court should consider all of the applicable factors set forth in Title 18, United States Code, Section 3553(a). *See United States v. Gall*, 552 U.S. 38, 49-50 (2007). Indeed, the Guidelines themselves are designed to calculate sentences in a way that implements the considerations relevant to sentencing as articulated in Section 3553(a). *United States v. Rita*, 551 U.S. 338, 348-50 (2007). The Section 3553(a) factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, to protect the

---

[4] The parties' estimate was based on a base offense level of 20, pursuant to USSG §2K2.1(a)(4) and a three-level reduction for acceptance of responsibility, resulting in a total offense level of 17. The estimated criminal history score was 6.

public from further crimes of the defendant, and to provide the defendant with needed correctional treatment; (3) the kinds of sentences available; (4) the sentencing range established by the Sentencing Guidelines; (5) any related Sentencing Commission policy statements; (6) the need to avoid unwarranted sentence disparities; and (7) the need for restitution to any victims.

## ARGUMENT

A sentence of 30 months of incarceration followed by 3 years of supervised release in this case is appropriate given the repeated possession of firearms.  The Government's recommended sentence is also intended to deter others, promote respect for the law, and offer rehabilitation for the Defendant.

### 1.    The Nature, Circumstances, and Seriousness of the Offense

Although "possessory" gun offenses are often perceived to be "minor" ones, they are anything but.  As the Court is well aware, our community in recent years has faced staggering levels of gun violence.  D.C. saw over 187 homicides in 2024.[5]  About 84 percent of the 187 homicides in 2024 involved the use of a firearm.[6]  Moreover, many shootings in this community are driven, at least in part, by the drug trade.  Thus, merely possessing a firearm—especially if done so in relation to a drug trafficking crime—is serious.  After all, all instances of gun violence are also instances of gun possession.

Here, while the Defendant is presently charged with only a firearm offense, the Defendant was in possession of a small bag of suspected cocaine base and a vial containing suspected PCP at the time of his arrest for the firearm.  *See* PSR ¶ 11.  During the Defendant's arrest, the amount of suspected cocaine base and PCP that the Defendant carried were in quantities consistent with

---

[5] MPD, *District Crime Data at a Glance*, https://mpdc.dc.gov/node/197622, MPD, *Annual Report 2024*, https://mpdc.dc.gov/sites/default/files/dc/sites/mpdc/page_content/attachments/MPD%20Annual%20Report%202024_FIN_web_0.pdf.
[6] *Id.*

narcotics distribution. *Id.* ¶¶ 11, 18 n.1.  Moreover, prior to the Defendant's arrest, officers had observed the Defendant smoking marijuana with another individual. *Id.* ¶ 9.  The Defendant's immediate response to the sight of officers was to flee and dangerously dispose of his firearm under a parked vehicle on a public street.  *See id.* ¶¶ 9-10.

The Defendant's blatant disregard for the law to continue to possess firearms not only demonstrates his contempt towards the law and Court orders but also contributes to the gun violence plaguing this community. Thus, the seriousness of the Defendant's conduct merits the Government's requested sentence.

> **2.      The Defendant's History and Characteristics**

The Defendant's criminal history is concerning and demonstrates a pattern of continuous criminal behavior.  As an adult, the Defendant received eight criminal convictions: two convictions involved cocaine possession and possession with the intent to distribute; two convictions involved a firearm; and one conviction involved contempt of court. *Id.* ¶¶ 32-39.

More recently, in November 2025, the DC Central Detention Facility sanctioned the Defendant for possessing major contraband, an 8-inch metal sheet sharpened to a point on one end. Id. ¶ 7.  In February 2015, the Defendant was convicted of Aggravated Assault Knowingly While Armed and Unlawful Possession of a Firearm (Prior Conviction). *Id.* ¶ 39.  During this offense, the Defendant brazenly put his handgun to deadly use in response to what he perceived as rude comments. *Id.*  The Defendant shot the victim twice from a few feet away. *Id.*  The victim lost several pints of blood by the time he reached the emergency room and required a blood transfusion. *Id.*  Then in May 2025, despite being released under supervision just *one year earlier* and knowing he had prior convictions, the Defendant knowingly decided to once again obtain and carry a fully loaded firearm in the instant case. *Id.* ¶¶ 12-13.

Moreover, the Defendant's conviction of Contempt for violating his conditions of release and conviction of Prisoner Escape reflects a pattern of disregard for court orders. *Id.* ¶¶ 35-36. Although, the Defendant has served multiple periods of incarceration, prior sentences have proven ineffective at deterrence and rehabilitation as demonstrated in this instant case.

### 3.    The Need to Promote Respect for the Law and Deterrence

Despite the *two* prior firearms convictions (Transport/Wear/Carry Handgun and Aggravated Assault Knowingly While Armed and Unlawful Possession of a Firearm), the Defendant remained undeterred, and he unlawfully obtained another firearm leading to this instant offense. A sentence of 30 months of incarceration followed by 3 years of supervised release is necessary to address the Defendant's recidivism and promote respect for the law. After all, this is the Defendant's *third* gun conviction as an adult.

### 4.    Other factors

As noted in the PSR ¶ 108, the average length of imprisonment for a similarly situated defendant is 66 months and the median length is 70 months. Here, the Government is only requesting 30 months, pursuant to the plea agreement and estimated guidelines as calculated by the parties[7]. While the Government acknowledges the financial and substance use challenges the Defendant faced, the Defendant repeatedly chose to violate the same laws he was convicted of, and he chose to engage in conduct that endangered himself and the community. Balancing the sentencing factors, the Government's recommended sentence considers the Defendant's conduct, his history and characteristics, the need for deterrence, and an opportunity for rehabilitation.

### CONCLUSION

---

[7] The miscalculation was the result of missing a crime of violence conviction that increased the base offense level from 20 to 24 under USSG §2K2.1(a)(2) and additionally, a higher criminal history category from sentences that were revived due to the revocation of probation under USSG §4A1.2(k).

6

The Defendant's conduct is serious and merits a commensurate sentence. For the foregoing reasons, the Government recommends that the Court sentence the Defendant to 30 months of incarceration followed by 3 years of supervised release. The Government also respectfully requests that the Court order forfeiture of the black Glock 23, .40 caliber handgun (S/N KZZ557) and 10 rounds of .40 caliber ammunition, pursuant to the plea agreement.

Respectfully submitted,

JEANINE FERRIS PIRRO
UNITED STATES ATTORNEY

By:    */s/ Iris Y. McCranie*
IRIS Y. MCCRANIE
Assistant United States Attorney
NY Bar No. 5011234
601 D Street, NW
Washington, DC 20530
(202) 252-7828
Iris.mccranie@usdoj.gov

7